# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| SHARON WALTON-LENTZ | CIVIL ACTION NO. 08-601 |
| VERSUS | JUDGE TRIMBLE |
| INNOPHOS, INC. | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed by defendant Innophos, Inc. ("defendant" or "Innophos") seeking dismissal of all of plaintiff's claims in the above-captioned suit.[1] For the reasons expressed below, the court finds that defendant's motion should be GRANTED in part and DENIED in part.

## I. RELEVANT FACTS

Plaintiff Sharon Walton-Lentz ("plaintiff") is a former Innophos employee who was fired on October 22, 2007 for allegedly taking approximately fifty (50) paid vacation days in a calendar year, representing nearly twice the amount of paid leave to which she was entitled under Innophos' leave policy.[2] Plaintiff asserts that she was the victim of retaliatory discharge due to her complaints about prior discriminatory actions by her supervisor Vince Talley ("Talley") and that Innophos' stated reason for her termination is mere pretext. On January 8, 2008, plaintiff completed an EEOC Charge

---

[1] R. 28.

[2] Letter to plaintiff from Wilma Harris of 10/22/2007, marked as "Exhibit 17" to plaintiff's deposition [R. 29-4,-5,-6]; Deposition of plaintiff at 138:13 - 16; Memorandum in support of motion [R. 35] at p. 5; R. 35 at p. 5.

1

Questionnaire and Supplemental Intake Questionnaire.[3]  Plaintiff's EEOC charge states

> [m]y job responsibilities were reduced and transferred to a
> younger employee. Salary step-up and overtime were also
> eliminated and transferred to a younger employee. Reason
> given for these actions was "you will be retiring in 3 - 4
> years." Since my termination a new employee has been
> hired to replace me. This is age discrimination.[4]

On March 4, 2008, plaintiff signed an EEOC Charge of Discrimination stating the following:

> I.    I began employment with Respondent as an Inventory
>       Control Auditor on October 6, 1977.  Later, I became
>       an Administrative Clerk.    In January 2007,
>       Respondent moved me to Shipping & Receiving. On
>       or about August 21, 2007, I spoke with Regional
>       Human Resource Director, John Hynes, regarding my
>       conversation with Vince Talley, Plant Manager, and
>       what I believed to be discriminatory practices.  On
>       October 22, 2007, Respondent discharged me.
>
> II.   Respondent failed to provide me with an adequate
>       reason for my discharge.
>
> III.  I believe that Respondent has violated the Age
>       Discrimination in Employment Act of 1964, as
>       amended, by discharging me in retaliation for
>       complaining about protected activity based on my age
>       (60).[5]

This charge was received by the EEOC New Orleans Field Office on March 5, 2008.[6]  She

was issued a Notice of Right to Sue on August 28, 2008.[7]

---

[3]EEOC forms marked as "Exhibit 1" to plaintiff's deposition [R. 29-4, -5, -6].

[4]Id.

[5]Id.

[6]Id.

[7]Id.

Plaintiff filed the instant suit on August 27, 2008 in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, alleging that, beginning in January of 2007, her responsibilities were transferred to a younger employee and that she lost step-up pay and overtime pay, resulting in a pay cut of $6,000 for plaintiff and a $6,000 raise for that younger employee.[8] Plaintiff further alleges that when she met with her supervisor, Talley, to ask why these actions were taken against her, she was told "that her responsibilities were given to a younger employee because she would be retiring within 3 - 4 years" and that Talley and other co-workers "made repeated comments that [she] was getting older, that she needed to retire, and [asked] when she would retire."[9] Plaintiff's suit states claims for hostile work environment, age discrimination and retaliatory discharge in violation of the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., the Louisiana Employment Discrimination Law ("LEDL"), La. R.S. 23:301, et seq. and Louisiana's whistleblower statute, La. R.S. 23:967.[10] Defendant timely removed this suit to federal court on the dual bases of federal question jurisdiction pursuant to 28 U.S.C. § 1331 and diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).[11]

Plaintiff filed a supplemental and amending complaint on September 26, 2008, attaching a copy of her Notice of Right to Sue and purportedly enlarging her claims as follows:

---

[8] R. 1-1 at ¶ 6.

[9] Id. at ¶ 7.

[10] Id. at ¶ 13.

[11] Defendant's notice of removal [R. 1] avers that plaintiff is a resident of the State of Louisiana, domiciled in East Baton Rouge Parish and Innophos, Inc. is a Delaware corporation with its principal place of business in New Jersey.

[p]laintiff supplements and amends her Petition /sic/ to add as paragraph 16b the following:

'16b.

Defendant Innophos, Inc. is liable unto Petitioner pursuant to Title VII, 42 USC /sic/ § 2000e, et seq. Petitioner is entitled to an award of damages, attorney fees and all other relief to which she is entitled under federal law. Defendant is additionally liable to Plaintiff for punitive damages as allowed by law pursuant to 42 U.S.C. § 1981a.'[12]

Defendant answered plaintiff's suit, including all supplemental and amending claims, and, additionally, filed a counterclaim against plaintiff alleging her indebtedness in the amount of $4788.22, representing pay for vacation time plaintiff allegedly received prior to her termination.[13] Defendant also asserts a counterclaim for attorney fees and other unspecified damages.[14]

Defendant filed the instant motion for summary judgment on March 31, 2010.[15] This case was subsequently transferred to U.S. District Judge Brian Jackson and then, on January 10, 2011, to the undersigned.[16] Due to the length of time for which this motion was pending prior to decision, the court allowed additional briefs to be filed by both parties.[17] The court has reviewed the record and now finds that the motion is ripe for decision. We address the law and arguments advanced by the parties below.

---

[12]R. 8.

[13]R. 2 at ¶¶ 4, 11.

[14]Id.

[15]R. 28.

[16]R. 45, 52.

[17]R. 54.

4

## II.    APPLICABLE STANDARD

Fed. R. Civ. P. 56 permits any party to move for summary judgment on all or a portion of the claims at issue in any suit.[18]  Rule 56 instructs that summary judgment should be rendered if

> [t]he pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

When faced with a motion for summary judgment, a non-moving party may not rest on the allegations of the pleadings.[19]  Once the moving party meets its initial burden of proof by demonstrating the absence of a genuine issue of material fact for trial, the nonmoving party must designate specific facts showing that there is a genuine issue for trial.[20]  If the nonmoving party fails to satisfy this burden, the court must enter summary judgment in favor of the movant if the record before it demonstrates that the movant is entitled to judgment as a matter of law.  If the nonmoving party is unable, for reasons specified by affidavit or declaration, to present facts necessary to justify its opposition to the motion, the court may defer ruling on the motion, deny the motion, grant additional time for the taking of discovery or issue any other appropriate order.[21]

---

[18]The court notes that this motion for summary judgment was filed in March of 2010, well before the effective date of the amendment to Fed. R. Civ. P. 56 on December 1, 2010.  The Advisory Committee Comments to this most recent amendment make it clear, however, that "[t]he standard for granting summary judgment remains unchanged." Thus, we cite the pre-amendment Rule, but note that the standard is the same under either version.

[19]Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

[20]Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990); Matsushida, 475 U.S. at 586; Celotex, 477 U.S. at 323; Little, 37 F.3d at 1975.

[21]Fed. R. Civ. P. 56(d).

In considering a motion for summary judgment, the court will view the evidence before it in the light most favorable to the nonmoving party, but will not infer proof of facts not properly alleged and supported.[22] Evidence presented in support of or in opposition to a motion for summary judgment must be of the sort that would admissible in evidence at the trial of the matter.[23]

## III.   ANALYSIS

### A.   Plaintiff's age discrimination and hostile work environment claims

Defendant asserts that plaintiff's claims of age discrimination and age-based hostile work environment under the ADEA and LEDL should be dismissed because they are, in each case, either time-barred, not administratively exhausted or plaintiff is unable to demonstrate the requisite prima facie case as to these claims.

### 1.   Scope of EEOC Charge

As discussed below, defendant contends that plaintiff's claims for age-based harassment and hostile work environment are not included within the scope of her EEOC charge and, for that reason, are not properly before the court. Plaintiff argues that these claims were included in the scope of the EEOC charge under applicable Fifth Circuit jurisprudence. Given the arguments of the parties, the court is called upon to construe the scope of plaintiff's EEOC charge in order to determine whether or not plaintiff's purported harassment and hostile work environment claims were fairly encompassed within the charge.

In addressing the scope of Title VII claims, the Fifth Circuit has repeatedly instructed that, although district courts lack jurisdiction to hear claims as to which no EEOC charge has been filed,

---

[22]Wallace v. Texas Tech University, 80 F.3d 1042 (5th Cir. 1996).

[23]Fed. R. Civ. P. 56(c)(2).

such courts possess ancillary jurisdiction to hear a claim that, though not expressly included in the EEOC charge, "grows out of an administrative charge that is properly before the court."[24] The appellate court has also extended that reasoning to ADEA claims.[25] Thus, the scope of plaintiff's EEOC charge should be construed to encompass, not only what is expressly included in the charge, but also what is expected to grow out of the EEOC investigation of that charge.[26]

The court has reviewed the record in an attempt to clarify the specific factual allegations advanced by plaintiff and the corresponding ADEA and Louisiana law claims plaintiff's EEOC charge is purported to include. Plaintiff's EEOC charge and subsequent suit clearly allege retaliatory discharge based on plaintiff's report of the reduction in her duties and pay to management, which she alleged constituted age-based discrimination based on Talley's alleged February 2007 comment to her concerning her anticipated retirement.[27] Plaintiff's suit alleges that she was subjected to frequent inquiries by Talley,[28] before and after his February 2007 comment that he anticipated her retirement in three or four years, as to when she would retire and that these comments constituted

---

[24]Barrow v. New Orleans S.S. Ass'n., 932 F.2d 473, 479 (5th Cir. 1991) quoting Gupta v. East Tex. State Univ., 654 F.2d 411, 414 (5th Cir. 1981).

[25]Id.

[26]Young v. City of Houston, Tex., 906 F.2d 177, 179 (5th Cir. 1990); Sanchez v. Standard Brands, 431 F.2d 455, 466 (5th Cir. 1970).

[27]R. 1-1 at ¶ 7.

[28]The court notes that plaintiff's deposition testimony alleges, for the first time, that these frequent inquiries into her retirement were made not only by Talley, but also by numerous other coworkers. See, R. 29-4, -5, -6 at 160:23 - 165:24. Neither plaintiff's suit, nor her EEOC charge mention inquiries or other harassment by coworkers.

age-based harassment.[29] Plaintiff's suit also vaguely alleges a hostile work environment claim based on the aforementioned age-based discrimination and harassment.[30]

After review of plaintiff's January 2008 EEOC charge questionnaire and March 2008 EEOC charge, the court finds that neither the charge questionnaire, nor the charge itself reference a claim based on harassment or hostile work environment. In response to questions on the questionnaire asking plaintiff to disclose what action was taken against her which she believed to be discriminatory and what harm such action caused, plaintiff's charge questionnaire states only that

> [m]y job responsibilities were reduced and transferred to a younger employee. Salary step-up and overtime were also eliminated and transferred to a younger employee. Reason given for these actions was "you will be retiring in 3 - 4 years." Since my termination a new employee has been hired to replace me. This is age discrimination.[31]

Similarly, plaintiff's EEOC charge, dated March 4, 2008, does not reference recurrent harassing comments or a hostile work environment. Moreover, the charge lists the earliest and latest possible "date(s) the discrimination took place" as 10/22/2007 in each case and plaintiff did not check the box indicating a "continuing action."[32]

Plaintiff argues that the EEOC investigator notes, included in the charge file produced in response to defendant's document request under the Freedom of Information Act (5 U.S.C. § 552),

---

[29]Id.

[30]Id. at ¶ 11.

[31]"Exhibit 1" to plaintiff's deposition [R. 29-4, -5, -6].

[32]Id.; While the court is aware that failure to check the "continuing action" box is not wholly determinative, we find that it is relevant evidence of plaintiff's failure to claim anything other than retaliatory discharge in this particular case. See, Sanchez, 431 F.2d at 462-63.

reference her purported hostile work environment claim. The notation plaintiff refers to reads

> Aug. 21 2007      Spoke w/Regional HR Mgr John Hynes
> about hostile work environment - Spoke w/ Plant Mgr.[33]

Our review of the remainder of the investigator's notes reveals no mention of harassing comments, except plaintiff's recollection of Talley's February 9, 2007 comment that the reason for the change in her job duties was that she would be retiring in three to four years.[34]  As is true of the charge questionnaire and the charge itself, we find that these notes focus on the reduction in plaintiff's job duties and her eventual termination, reasonably making out claims of age-based discrimination and retaliatory discharge based on plaintiff's complaints regarding these discriminatory duty and pay changes.

In construing the scope of an EEOC charge, relevant jurisprudence describes the twin goals of the charge document: to give notice to the employer of the existence and nature of the charges and to trigger the investigatory and conciliatory role of the EEOC in hopes of eliminating discriminatory practices and policies by administrative process.[35]  Plaintiff's EEOC questionnaire and charge clearly provided notice to defendant that plaintiff alleged age discrimination and retaliatory discharge based

---

[33]R. 28-3 at p. 19; The August 2007 meeting between plaintiff and Hynes referenced above was explained by plaintiff in her deposition. She recalled that she shared with Hynes that her job responsibilities had been given to someone else and that Talley's stated reason for the change in her duties was that she would be retiring in three to four years. She stated that she felt that "it was a hostile work environment." According to plaintiff's own testimony, she did not raise the issue of age-based verbal harassment from Talley and other coworkers at this time. R. 29-4, -5, -6 at 233:11 - 234:3.

[34]Id. at p. 18.

[35]Clayton v. Rumsfeld, 106 Fed. Appx. 268 (5th Cir. 2004) citing Babrocky v. Jewel Food Co., 773 F.2d 857, 863 (7th Cir. 1985) and Manning v. Chevron Chem. Co., 332 F.3d 874, 878-89 (5th Cir. 2003).

on her August 2007 complaint to Hynes as to the reduction in her duties and pay, as well as Talley's alleged reason for taking such actions. These documents did not, however, provide notice to defendant that plaintiff also alleged the existence of a hostile work environment based on a protracted history of age-related verbal harassment.

Addressing the issue of amendments to EEOC charges, the Fifth Circuit reasoned that, when an amendment sets forth a new theory of recovery, it cannot relate back to the original charge for prescriptive purposes.[36] Although instant plaintiff did not attempt to amend her EEOC charge, we think the reasoning of the appellate court should apply with equal force to the facts before this court. The burdens of proof and analysis required under hostile work environment claims differs from that attendant to retaliatory discharge claims and they are wholly different theories of recovery. As such, the inclusion of these claims by this court would not serve the twin goals of the EEOC charge.

Moreover, plaintiff has not demonstrated that the alleged "frequent, constant" comments by her coworkers were encompassed within the scope of the EEOC investigation. In fact, plaintiff does not allege, nor do notes taken during the meeting show, that she discussed these harassing comments with the EEOC investigator. Thus, the evidence before the court demonstrates that plaintiff's allegations of continual verbal age-related harassment did not grow out of the EEOC investigation as a matter of fact. As noted above, plaintiff's first mention of a protracted history of age-based verbal harassment occurs in her original complaint.[37]

Similarly, plaintiff does not allege, nor does the evidence demonstrate, that she ever discussed any age-based harassing comment, except the February 9, 2007 comment by Talley, with

---

[36]EEOC v. Miss. Coll., 626 F.2d 477 (5th Cir. 1980).

[37]R. 1-1.

Hynes at their August 2007 meeting. While we acknowledge that liberal construction of the charge is favored because a complainant is not expected to be a skilled draftsman, we find that plaintiff's failure to mention these particular claims, not only to Hynes, but also to the EEOC investigator, is not in the nature of a technical charge deformity, but more in the nature of a failure to allege facts that require no artful drafting or specialized skill.

According to these facts, the court finds no basis to conclude that plaintiff's claims based on these alleged comments were encompassed within her EEOC charge. For this reason, we find that claims by plaintiff under the ADEA and LEDL for harassment and hostile work environment based on these alleged comments by Talley and her coworkers were not included in the scope of her EEOC charge and are, therefore, not properly before the court, as they have not been administratively exhausted.[38] Conversely, we find that plaintiff's EEOC charge did fairly include claims for age-based discrimination and retaliatory discharge and that these particular claims have been administratively exhausted.

2. Are plaintiff's claims time-barred under federal and/or state law?

Defendant next asserts that a portion of plaintiff's federal and state law claims are time-barred based on the fact that plaintiff filed her EEOC charge in January of 2008. 29 U.S.C. § 626(d), pertaining to enforcement of the ADEA, provides that

> [n]o civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such charge shall be filed –
>
> (A)    within 180 days after the alleged unlawful

---

[38]Tolbert v. U.S., 916 F.2d 245, 248 (5th Cir. 1990) citing White v. Frank, 895 F.2d 243, 244 (5th Cir. 1990).

<blockquote>
practice occurred; or

(B)     in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after the receipt by the individual of notice of termination of proceedings under State law, whichever is earlier...
</blockquote>

29 U.S.C. § 633(b) references what are known as "deferral states," which are those states that have enacted state law prohibiting employment discrimination based on age and establishing a state agency from which an aggrieved party may seek relief. Louisiana is a deferral state for Title VII and ADEA purposes and, accordingly, plaintiff was required to file her EEOC charge within 300 days of the alleged unlawful practice.[39] Similarly, La. R.S. 23:303(D) provides that, although civil actions under the LEDL are subject to a one-year prescriptive period, such prescriptive period shall be suspended during the investigation of a claim by the EEOC for up to six (6) months.

Pointing out that plaintiff filed her EEOC charge on January 14, 2008, defendant asserts that, under the applicable 300-day window for filing an EEOC charge, allegations of age-discrimination or age-based harassment occurring before March 20, 2007 are time-barred under the ADEA and the LEDL.

Plaintiff's deposition testimony indicates that she experienced a reduction in her duties and a corresponding reduction in pay in January of 2007. Plaintiff's suit alleges that these duty and pay reductions constituted age-based discrimination based on Talley's explanation and the fact that these

---

[39]As argued by plaintiff, Louisiana became a deferral state in 1994 with the establishment of the Louisiana Commission on Human Rights. Dorgan v. Foster, 2006 WL 2067716 (E.D. La. 2006) (Recognizing that, although the Fifth Circuit has not expressly ruled that Louisiana is a deferral state, the appellate court has repeatedly applied the 300-day statute of limitations); Michel v. Saint-Groban Containers, Inc., 2005 WL 3339568 (W.D. La. 2005) (Recognizing that Louisiana is a deferral state for Title VII and ADEA purposes).

duties and pay were transferred to a younger coworker. Under the ADEA, plaintiff must file an EEOC charge based on these actions within 300 days of their occurrence. Thus, plaintiff was required to file her charge no later than November 26, 2007, assuming for plaintiff's benefit that her duties and pay were reduced on the very last day of January of 2007. As above, plaintiff's EEOC charge was not filed until January 14, 2008. Accordingly, the court finds that plaintiff's claim of age-based discrimination concerning the reduction of her duties and pay is time-barred under the ADEA.

The LEDL required plaintiff to file suit on her claim of age-based discrimination no later than 18 months after the occurrence forming the basis of her claim. Assuming, again, that plaintiff's duties and pay were reduced on January 31, 2007, her suit must have been filed no later than May 31, 2008. Although the LEDL provides for tolling of the one-year prescriptive period for bringing such claims during the pendency of an EEOC investigation, tolling under the LEDL is limited to six months. In January of 2008, when plaintiff filed her EEOC charge, nearly one (1) year of plaintiff's prescriptive period had run. Thus, although her prescriptive period was suspended on January 14, 2008 upon the filing of her EEOC charge, the prescriptive period began to run again six months from that date, or on July 14, 2008. Again assuming that plaintiff's duties and pay were reduced on January 31, 2007 and that the remaining seventeen (17) days of her one-year prescriptive period began to run again on July 14, 2008, Louisiana law required plaintiff to file suit on her state law claim no later than August 1, 2008. Plaintiff's suit alleging violation of the LEDL was not filed until August 27, 2008, making her Louisiana law claim for age-discrimination prescribed under applicable law.

We now turn to plaintiff's purported ADEA and LEDL claims of age-based verbal

13

harassment. Although the court has already ruled that these claims were not encompassed in plaintiff's EEOC charge, we address defendant's argument that these claims are time-barred out of an abundance of caution.

Plaintiff's deposition testimony and complaint differ as to the time frames in which plaintiff alleges that she endured frequent inquiries from Talley and other coworkers as to when she would retire.[40] Plaintiff's complaint alleges that Talley made "repeated comments that Petitioner was getting older, that she needed to retire, and inquire[d] when she would retire" before and after he explained that plaintiff's duties and pay had been transferred to a younger employee because he anticipated that plaintiff would retire in three or four years during their February 2007 meeting.[41] In contrast, plaintiff's deposition testimony alleges that Talley's retirement comments ceased in early 2007 because "[t]oward the end, he avoided me, so it would be before the beginning of the year and we had the meeting in February and then up until the time I met with John Hynes."[42] Plaintiff did not testify as to what time frame she endured retirement comments from other coworkers.

Plaintiff met with John Hynes on or about August 22, 2007.[43] Construing these conflicting accounts in the light most favorable to plaintiff as the nonmoving party, the court finds that

---

[40]As noted above, plaintiff's complaint and deposition also differ as to who plaintiff alleges verbally harassed her. While her complaint alleges that "...Talley, before and after [his alleged February 2007 comment regarding her impending retirement in three or four years], made repeated comments that Petitioner was getting older, that she needed to retire, and inquire[d] when she would retire." R. 1-1 at ¶ 7. Plaintiff's deposition testimony alleges that comments about her retirement were frequently made, not only by Talley, but by various coworkers. R. 29 - 4, -5, -6 at 160:23 - 165:24.

[41]R. 1-1 at ¶ 7.

[42]R. 29-4, -5, -6 at 163:12-15.

[43]Id. at 233:11-16.

plaintiff's claims for age-based verbal harassment by Talley and other coworkers would not be time-barred under the ADEA and LEDL. Assuming for the sake of this motion that plaintiff alleges that she endured such verbal harassment until she met with John Hynes on August 22, 2007, plaintiff's EEOC charge must have been filed no later than June 26, 2008. Thus, had plaintiff's claim for age-based verbal harassment been included within the scope of her EEOC charge, we would find that it was timely filed under the ADEA, because her EEOC charge was filed in January of 2008. Similarly, we would find that plaintiff's claim was timely under the LEDL's eighteen-month prescriptive period. Again, however, we reiterate that these claims were not fairly presented within the scope of plaintiff's EEOC charge and we lack ancillary jurisdiction over them for that reason.

We next address plaintiff's claims of retaliatory discharge under the ADEA and Louisiana's whistleblower statute. Defendant does not suggest that such claims are untimely and the evidence before the court affirms that they are, in fact, timely under applicable federal and state law.[44] Plaintiff was terminated on October 22, 2007. Her EEOC charge clearly alleging retaliatory discharge was filed on January 14, 2008, well within the applicable 300-day window under the ADEA and also well within the applicable one-year prescriptive period under Louisiana law, including the deferral state tolling provision.[45]

---

[44]R. 35 at p. 23, n. 14.

[45]La. Civ. C. Art. 3492; La. Langley v. Pinkerton's Inc., 220 F.Supp. 575 (M.D. La. 2002); Nolan v. Jefferson Parish Hospital Service Dist. No. 2, 790 So.2d 725, 733 (La. App. 5 Cir. 2001).

3.    Is defendant entitled to summary judgment on the merits of plaintiff's ADEA and LEDL age discrimination claims?

The ADEA declares it unlawful for an employer

>    (1)    to fail or refuse to hire or to discharge any individual or otherwise discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
>
>    (2)    to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
>
>    (3)    to reduce the wage rate of any employee in order to comply with this Act.[46]

The ADEA expressly applies only to a "protected class" of individuals who are age forty (40) or older.[47]    The LEDL prohibits identical conduct, using identical language, and also applies to individuals who are age forty (40) or older.[48]    Given that the LEDL mirrors the ADEA, courts apply federal precedent to LEDL claims,[49] analyzing both types of claims under the burden shifting framework enunciated in McDonnell Douglas Corp. v. Green.[50]

---

[46]29 U.S.C. § 623(a)(1) - (3).

[47]29 U.S.C. § 631(a).

[48]La. R.S. 23:311-312.

[49]O'Boyle v. La. Tech Univ., 741 So.2d 1289, 1290 (La. App. 2 Cir. 1999).

[50]411 U.S. 792 (1973).

To establish a prima facie case of age discrimination under the ADEA and LEDL, plaintiff must show that:

1. she is a member of a protected class;
2. she was qualified for the position;
3. she suffered an adverse employment action; and
4. she was replaced by a younger employee or treated less favorably than other similarly situated employees outside the protected class.[51]

If plaintiff is able to demonstrate a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decision at issue.[52] If defendant is able to articulate such a reason, the burden shifts back to plaintiff to show that the reason proffered by defendant is merely pretext for an impermissible animus.[53] As argued by defendant, a plaintiff asserting an age discrimination claim under the ADEA bears the ultimate burden of persuasion and must convince the trier of fact that defendant engaged in intentional discrimination based on age. Stated differently, plaintiff must demonstrate that age was the "but-for" cause of the employment decision at issue.[54]

---

[51]Id.; St. Mary's Honor Cntr. v. Hicks, 509 U.S. 502 (1993); Jackson v. Cal-Western Packaging Corp., 602 F.3d 374, 378 (5th Cir. 2010); Berquist v. Washington Mut. Bank, 500 F.3d 344, 349 (5th Cir. 2007); Rachid v. Jack in the Box, Inc., 376 F.3d 305, 309 (5th Cir. 2004); Palasota v. Haggar Clothing Co., 342 F.3d 569, 576 (5th Cir. 2003); Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 957 (5th Cir. 1993).

[52]Id.

[53]Id.

[54]Gross v. FBL Financial Services, Inc., ___ U.S. ___; 129 S.Ct. 2343 (2009); Moss v. BMC Software, Inc., 610 F.3d 917 (5th Cir. 2010); Ligon v. LaHood, 614 F.3d 150 (5th Cir. 2010). We expressly reject plaintiff's contention that a plaintiff offering direct evidence of age-based animus is entitled to proceed under a mixed-motive analysis in consideration of the cases cited above.

Age discrimination claims under the ADEA and LEDL contemplate only "ultimate employment decisions" such as hiring, granting leave, discharging, promoting or compensating.[55] Defendant asserts that a reduction in plaintiff's duties and overtime and step-up pay does not qualify as an "ultimate employment decision" and, therefore, plaintiff is unable to demonstrate the requisite prima facie case of discrimination based on the January 2007 changes to her duties, overtime assignments and step-up pay. We have held, above, that plaintiff's purported state and federal claims based on the January 2007 changes to her duties and pay are time-barred, but we address defendant's argument as to the merits out of a continued abundance of caution.

Defendant asserts that plaintiff is not entitled to rely on overtime assignments and step-up pay and that, accordingly, these benefits do not constitute "ultimate employment decisions." The court disagrees and finds that plaintiff's reduced duties necessarily meant reduced compensation. Fifth Circuit jurisprudence establishes that plaintiff's objective showing of a loss of compensation, duties and/or benefits is sufficient to enable a reasonable trier of fact to conclude that an adverse employment action was taken against her.[56] Although we note that, in certain circumstances, the payment of overtime or incentive pay may be so sporadic as to show a "de minimis" impact on the plaintiff, this is not such a case. In this case, it is uncontested that plaintiff performed overtime work

_____

[55]Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006); Bouvier v. Northup Grumman Ship Systems, Inc., 350 Fed. Appx. 917 (5th Cir. 2009); McCoy v. City of Shreveport, 492 F.3d 551 (5th Cir. 2007).
  The court notes that, while these cases address Title VII discrimination claims, it is well established that the first three elements of a prima facie case of discrimination under the ADEA are identical to those required by Title VII. Brown v. Bunge Corp., 207 F.3d 776, 781 (5th Cir. 2000) citing Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 957 (5th Cir. 1993).

[56]Peagram v. Honeywell, Inc., 361 F.3d 272, 283-84 (5th Cir. 2004) citing Serna v. City of San Antonio, 244 F.3d 479, 485 (5th Cir. 2001) and Hunt v. Rapides Healthcare System LLC, 277 F.3d 757, 770 (5th Cir. 2001); Dollis v. Rubin, 77 F.3d 777, 781-82 (5th Cir. 1997).

and was paid overtime and step-up pay for a period of at least two (2) years. The pay decrease at issue amounts to $6000, which, again, could reasonably be characterized by a fact finder as a significant portion of plaintiff's compensation, making plaintiff's job objectively less attractive than before.

As to plaintiff's purported discrimination claim based on the January 2007 changes to her duties and pay, we also find that, were these claims not time-barred, plaintiff would have successfully demonstrated a <u>prima facia</u> case under federal and state law,[57] as she has undoubtedly shown that she was a member of a protected class (older than 40 years of age in January of 2007),[58] she was qualified to perform the duties at issue, she was subjected to an adverse employment action when her job duties, overtime and step-up pay were reduced and were reassigned to two younger employees.[59]

Having determined that plaintiff has, theoretically, demonstrated a <u>prima facie</u> case of age discrimination based on this particular claim, we now consider whether defendant has proffered a legitimate, non-discriminatory reason for implementing the January 2007 changes at issue. We find that defendant has made such a showing. Specifically, defendant asserts that plaintiff's trucking duties were transferred to Candice Clancy ("Clancy") in an effort to reduce company expenditures

---

[57]The LEDL "mirrors the federal ADEA and should be construed in light of federal precedent." <u>O'Boyle v. La. Tech Univ.</u>, 741 So.2d 1289, 1290 (La. App. 2 Cir. 1999).

[58]29 U.S.C. § 631(a); La. R.S. 23:311.

[59]Neither party disputes that the duties taken from plaintiff were reassigned to younger employees. Specifically, plaintiff's trucking-related duties were reassigned to Candice Clancy and her payroll and IT duties were reassigned to Stacey Adams. Both Clancy and Adams were younger than plaintiff and were not within the protected ADEA class.

on overtime pay.[60] Defendant further asserts that Clancy was chosen to take over these duties because she had prior experience with a trucking company.[61] Defendant notes that Clancy did not receive additional pay for assuming these duties.[62]

Defendant asserts that plaintiff's payroll and IT duties were transferred to Stacey Adams ("Adams") as part of the company's effort to become compliant with the Sarbanes-Oxley Act by instituting checks and balances on its payroll entry system.[63] Defendant further asserts that "locked payroll procedures" were put in place to ensure that neither plaintiff, nor Adams could fraudulently enter payroll information pertaining to their relatives who were also employed by Innophos.[64]

Concerning plaintiff's loss of step-up pay, defendant asserts that employees may only expect to receive step-up pay when they were supervising other employees and, in January 2007, plaintiff ceased supervising employees and, accordingly, lost her step-up pay.[65]

Considering these legitimate, non-discriminatory reasons for the January 2007 changes asserted by defendant, we must determine whether plaintiff is able to demonstrate that any of these proffered reasons is merely pretext for impermissible age-based discrimination under the McDonnell Douglas framework. Plaintiff argues that defendant's excuse that trucking duties were transferred

---

[60]R. 35 at p. 7.

[61]Id.

[62]Id.

[63]Id. at p. 8.

[64]R. 29-9 at p. 4. Both plaintiff's son-in-law and Adams' husband were non-exempt employees at Innophos.

[65]Id. at pp. 7 - 9.

to another employee in order to reduce company expenditures on overtime pay are pretext because

> Talley testified that he made the decision to remove truck
> shipping not because of a need to reduce overtime, but
> because he noticed that Plaintiff was "always busy," and since
> the company "had available resources" he moved those duties
> to Clancy to "help" plaintiff.[66]

We do not find Talley's testimony to be inconsistent with a reduction in overtime expenditures, given the uncontested fact that Clancy did not receive additional pay for taking on these duties. Moreover, Talley's testimony does not evidence age-based animus.

Plaintiff further argues that the transfer of her payroll and IT duties to Adams cannot be explained by defendant's proffered excuse that compliance with the Sarbanes-Oxley Act required defendant to ensure that employees did not have access to payroll systems in such a way that would enable them to commit fraud. Plaintiff points out that, while she was told that her son-in-law's employment at Innophos made transfer of these duties necessary, Adams' husband was also employed by Innophos at that time.[67]

Given the fact that neither Adams, nor plaintiff could input payroll information pertaining to their non-exempt employee relatives,[68] we do not find that plaintiff has demonstrated pretext as to this particular duty transfer.

Finally, plaintiff asserts that defendant did not have a policy defining step-up pay and that

---

[66]R. 44 at p. 28, quoting deposition of Talley [R. 39-2] at 50:5-17.

[67]Id.

[68]R. 29-9 at p. 4. Although plaintiff argues that the "spreadsheet or chart used to track vacation hours was accessible by everyone at the Geismar site and was not password protected," [R. 44 at p. 28] we are convinced that plaintiff is referring to the group vacation calendar, while defendant refers to the inputting of hours worked for payroll submission purposes. These are clearly two different documents or databases.

her receipt of such pay during 2005 and 2006 was not limited to times when she was supervising employees or involved in extra duties. Plaintiff also points out that Tommy Craig, a coworker continued to receive step-up pay until he was officially promoted.

We agree with defendant that plaintiff's argument demonstrates, at the most, a mistake by defendant in paying her step-up pay when she was not awaiting a promotion or taking on additional responsibilities beyond her pay grade.[69] Plaintiff's argument does not show that age was a factor in the decision to end her step-up pay, much less the but-for cause of this action.

In addition to her pretext arguments, plaintiff asserts that Talley's statement that the reason he transferred a portion of her duties to another employee and, consequently, offered her less overtime and step-up pay, was that she was going to retire in three or four years is direct evidence of age-based animus.[70] Defendant argues that this single comment does not constitute direct evidence because an employer is entitled to "gauge the longevity of its work force and to plan for possible future personnel needs."[71] Defendant cites, among other cases, Moore v. Eli Lilly & Co., a Fifth Circuit ruling from 1993 in which the court found that an incoming supervisor's questions to his predecessor regarding ages of employees and whether or not any employees intended to retire soon did not evidence discriminatory intent. The Moore court found that the incoming supervisor

---

[69]R. 50 at p. 17.

[70]R. 44 at pp. 23-25. We note that plaintiff also asserts that alleged weekly comments by Talley are direct evidence of age-based animus. The court has already concluded that any claims premised on plaintiff's factual allegation of a protracted history of verbal age-based harassment by Talley and/or other coworkers is not properly before this court because such claim, which plaintiff characterizes as one for "hostile work environment" and "harassment" were not fairly included in the scope of her requisite EEOC charge. For that reason, we do not include these factual allegations in our continued analysis.

[71]R. 35 at pp. 22-23.

was entitled to make reasonable inquiries about his employees in order to gauge longevity.[72]

In Moss v. BMC Software, Inc., a recent Fifth Circuit ruling, the appellate court considered whether or not a comment that a supervisor was "searching for a lawyer at a 'more junior' level than herself" constituted direct evidence of discrimination.[73] Citing prior circuit jurisprudence on this issue, the court recalled that

> [r]emarks may serve as sufficient evidence of age discrimination if they are:
>
> 1) age related,
> 2) proximate in time to the employment decision,
> 3) made by an individual with authority over the employment decision at issue, and
> 4) related to the employment decision at issue.[74]

The court also cautioned that "'stray remarks' do not demonstrate age discrimination."[75] The Moss court concluded that the "junior level" comment at issue in that case was not "direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee."[76] The court found that the comment required inference or presumption and that it was plausible that the comment referred to years of experience with the company or years of experience in general, rather than age. For these

---

[72]Moore, 990 F.2d at 818.

[73]610 F.3d 917, 929 (5th Cir. 2010).

[74]Moss, 610 F.3d at 929 citing Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 683 (5th Cir. 2001).

[75]Id. citing EEOC v. Texas Instruments, Inc., 100 F.3d 1173, 1181 (5th Cir. 1996).

[76]Id.

23

reasons, the Fifth Circuit affirmed the finding of the trial court that no direct evidence of age discrimination had been produced at the summary judgment stage.

We note at this stage of our analysis that Talley's declaration, filed in support of defendant's motion for summary judgment, denies that he ever stated to plaintiff that the reason for the January 2007 changes in her duties and pay was that she would retire in three or four years.[77] Talley further denies that he ever told plaintiff that she was old or that she needed to retire.[78] Talley's denial is also reflected in the declaration of Innophos Labor Relations Manager John Hynes ("Hynes").[79] Hynes attests that, after meeting with plaintiff on August 22, 2007 and learning of her allegation concerning Talley's retirement comment, he discussed the matter with Talley directly, who denied that he made such a remark.[80]

Assuming for the sake of this motion that Talley did offer plaintiff's impending retirement as the reason for the January 2007 changes, the court finds that this particular comment would meet the standard for direct evidence under the Fifth Circuit jurisprudence above. Talley's purported comment was age related and stated in February 2007 in direct response to plaintiff's inquiry as to the reason for the reduction in her duties and pay. Talley was plaintiff's supervisor and undoubtedly had authority over her regarding employment decisions.[81] Accordingly, were plaintiff's claim not

---

[77]R. 29-9 at ¶ 15.

[78]Id.

[79]R. 28-1.

[80]Id. at ¶¶ 11-15.

[81]Moss v. BMC Software, Inc., 610 F.3d at 929 quoting Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 683 (5th Cir. 2001).

24

time-barred, we would find that plaintiff has demonstrated direct evidence upon which a reasonable jury could base a finding that the legitimate, non-discriminatory reasons for the January 2007 changes were pretextual and age discrimination was the "but-for" cause of the January 2007 changes at issue.[82]

4.   Is defendant entitled to summary judgment on the merits of plaintiff's ADEA and Louisiana whistleblower claims for discriminatory and retaliatory discharge?

Defendant asserts that, because it can demonstrate a legitimate, non-discriminatory reason for plaintiff's October 2007 termination, as to which plaintiff can show no pretext, plaintiff's discharge claims under the ADEA and LEDL should be dismissed.[83] Specifically, defendant points out that plaintiff took more than fifty (50) paid vacation days in 2007 when she was only entitled to a maximum of 25 paid vacation days in that year.[84] Defendant further points out that plaintiff does not deny that she violated the Innophos vacation policy.[85] Defendant also asserts that plaintiff must demonstrate that retaliation for her complaints of age discrimination were the but-for cause of her termination and that plaintiff fails to offer evidence fulfilling this burden.[86]

In addition to prohibiting certain discriminatory practices against members of the protected class by employers, the ADEA also makes it unlawful for an employer to

discriminate against any of his employees or applicants for

_____

[82]Id. quoting EEOC v. Texas Instruments, Inc., 100 F.3d 1173, 1181 (5th Cir. 1996) citing Bodenheimer v. PPG Indus., 5 F.3d 955, 958 (5th Cir. 1993).

[83]R. 35 at pp. 28-33.

[84]Id.

[85]Id.

[86]Id.

25

employment...because such individual...has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [the ADEA].[87]

To establish a prima facie case of retaliation under the ADEA, plaintiff must show that

> (1)   she is qualified for the job in question;
> (2)   she engaged in a protected activity under the ADEA;
> (3)   she was subjected to an adverse employment action;
> (4)   there is a causal link between the protected activity and the adverse employment action.[88]

As argued by defendant, the United States Supreme Court's ruling in Gross v. FBL Financial Services, Inc. dictates that plaintiff must demonstrate that plaintiff's participation in a protected activity under the ADEA was the "but-for" cause of the adverse employment action at issue.[89] In Gross, the Court made it clear that mixed motive analysis was not appropriate as to ADEA claims because, unlike Title VII, the ADEA employs the language "because of," which the Court found prohibited a finding of a violation based on age as one of several motivating factors.[90]

Plaintiff argues that she is able to demonstrate the requisite prima facie case of retaliation because she can show: (1) that she engaged in a protected activity in reporting to management what she believed to be age discrimination; (2) that she was subjected to an adverse employment action in that she was terminated on October 22, 2007; and that her report of age discrimination was the

---

[87]29 U.S.C. § 623(d).

[88]Holtzclaw v. DSC Communications Corp., 255 F.3d 254 (5th Cir. 2001) citing Rogers v. Int'l. Marine Terminals, Inc., 87 F.3d 755, 761 (5th Cir. 1996) and Hines v. Mass. Mut. Life Ins. Co., 43 F.3d 207, 209 (5th Cir. 1995).

[89]____ U.S. ____, 129 S.Ct. 2343 (2009).

[90]Id. at 2350.

but-for cause of her termination.[91]

Plaintiff and defendant offer somewhat different chronologies concerning the events prior to plaintiff's October 22, 2007 termination. Defendant asserts that Wilma Harris ("Harris"), Vice President of Human Resources for Innophos, received an "independent and unsolicited" report from John Foster ("Foster")[92] on September 26, 2007 that plaintiff appeared to be taking an excessive amount of vacation in violation of Innophos policy.[93] Foster's declaration states that he visited the Geismar site on September 26, 2007 and met with Adams to obtain some financial information. Foster recalls that, in her office, Adams had a large wall calendar for the year 2007 containing the notation "SW" on many dates.[94] Foster states that, when he inquired as to what "SW" meant, Adams explained that each of those days was a day on which plaintiff was absent or on vacation.[95] Foster states that, because of his knowledge of Innophos policy, he was immediately aware that this number of absences violated company policy.[96] Foster states that when he made further inquiry of Adams as to how plaintiff could take so many days of vacation during 2007, Adams suggested that he speak to Talley about it.[97] Foster states that he did speak to Talley and that Talley confirmed that there was

---

[91]R. 44 at p. 32.

[92]According to defendant, Foster was the Corporate Business Manager of Acid Phos and the highest ranking Innophos employee in the Baton Rouge area. Defendant asserts that Foster was a former supervisor of plaintiff and that there had been no issues between plaintiff and Foster in the past. R. 35 at p. 13, n. 7.

[93]R. 44 at pp. 28-29; R. 29-7, -8 at ¶ 11.

[94]R. 28-2 at ¶ 6.

[95]Id.

[96]Id.

[97]Id.

27

an issue with plaintiff's absences and that it was being addressed.[98] Foster recalls that he contacted Harris and informed her of the issue regarding plaintiff's vacation usage.[99]

Harris's declaration states that, upon receiving this information from Foster, she contacted Hynes and asked if he was aware of any such issue with plaintiff's vacation time.[100] Harris further states that Hynes explained that, during his August 2007 visit to the Geismar site, Talley mentioned this issue to him and, therefore, he was aware of it.

On September 28, 2007, Harris and Hynes conducted an unannounced on-site investigation or audit of the Geismar site in order to review personnel records and files, vacation calendars and plaintiff's records of vacation usage.[101] Plaintiff had taken that day off and was not present during the surprise audit.[102] Harris's declaration states that the electronic group calendar and documents in plaintiff's desk both indicate that plaintiff had taken fifty (50) vacation days and had "other excessive absences and had been absent an additional 21 days" so far in 2007.[103] Harris further states that she continued to investigate plaintiff's absences by ensuring that plaintiff was not a former Stauffer employee with a vested Stauffer vacation benefit – she was not – and also determined that plaintiff had not been issued any authorization letter which would enable her to exceed the maximum allotment of thirty (30) days available under Innophos policy – plaintiff had not been issued such a

---

[98]Id. at ¶ 7.

[99]Id.

[100]R. 29-7, -8 at ¶ 12.

[101]Id.

[102]R. 29-4, -5, -6 at 248:16-23.

[103]Id. at ¶ 14.

28

letter.[104]

Hynes spoke to plaintiff by phone on October 18, 2007. Hynes's declaration states that during this conversation plaintiff did not deny taking an additional twenty-five (25) days of vacation time and verified to Hynes that she was not a former Stauffer employee with a vested vacation benefit.[105] Hynes further recalls that she admitted that she knew that taking additional vacation was against Innophos policy, but argued that the Geismar facility did not follow that policy.[106] Hynes states that he reported the substance of this telephone conversation to Harris on the same day.[107]

On October 22, 2007, plaintiff was issued a written letter, signed by Talley on behalf of Harris, explaining that she was found to be in violation of company policy which limits paid vacation and that this violation resulted in her receipt of pay to which she was not entitled.[108] The letter further explained that plaintiff's employment was terminated, effective as of that date, and that Innophos was not waiving its right to recover excess pay received by plaintiff as a result of her violation of company policy.[109]

Plaintiff, on the other hand, alleges that she met with Hynes in August of 2007 to discuss the reduction in her duties and pay during his site visit.[110] Plaintiff seems to assert that the reason Adams

---

[104]Id. at ¶¶ 15, 16.

[105]R. 28-1 at ¶ 19.

[106]Id.

[107]Id. at ¶ 20.

[108]Exhibit 17 to plaintiff's deposition [R. 29-4, -5, -6].

[109]Id.

[110]R. 44 at p. 13.

noted plaintiff's 2007 absences on her wall calendar was that Talley asked Adams to keep track of plaintiff's absences.[111] Plaintiff further alleges that, when Hynes contacted her on October 18, 2007, he explained to plaintiff that "Talley asked him to look into her vacation time."[112] Plaintiff also alleges that Harris' inspection of documents in her desk during the surprise audit of September 28, 2007 "yielded no evidence of anything that was not done properly" and that Harris later testified that plaintiff was "meticulous with her work."[113] Plaintiff points out that, once confronted with the allegations of excessive vacation time, she was given no opportunity to review records of her vacation time or to further discuss the matter before being terminated on October 22, 2007.[114] Plaintiff further points out that her vacation was always approved by Talley and/or Adams and that other employees at Innophos also took more vacation time in a year than was permitted under Innophos' policy.[115] Plaintiff suggests that these facts are a sufficient basis for a finding of pretext by a reasonable jury.[116]

We have reviewed the arguments of the parties and find that plaintiff has alleged facts which, if deemed credible by the trier of fact, would form a reasonable basis for judgment in her favor as to her ADEA retaliatory discharge claim. Specifically, the court finds that plaintiff has demonstrated that she engaged in a protected activity by complaining to management about what she felt were

---

[111] Id. at p. 14.

[112] Id. at p. 15.

[113] Id. at pp. 15-16.

[114] Id. at p. 17, n. 96.

[115] Id. at pp. 18-19.

[116] Id. at pp. 29-31.

discriminatory changes to her duties and pay based on her age and, further, that she endured an adverse employment decision in that her employment was terminated.[117]

Although plaintiff's demonstration of a causal link between her age discrimination complaints and her termination is more factually complex, we find that it provides a sufficient basis upon which a reasonable jury could make a determination of cause. First, plaintiff points out the temporal proximity between her August 22, 2007 report of discrimination and her October 22, 2007 termination. While timing is not determinative on its own, it is a factor properly considered in the retaliation analysis.[118] Second, plaintiff alleges that Talley, against whom she lodged her discrimination complaint, played a significant role in the investigation of her use of vacation time, beginning with his discussion of this issue with Hynes during the same meeting at which Hynes informed Talley of plaintiff's discrimination allegation against him. While defendant argues that Foster initiated the investigation without any knowledge of plaintiff's age discrimination complaint against Talley, Foster's declaration clearly states that Adams referred him directly to Talley and further evidence demonstrates that Talley was involved at various points in this process and, accordingly, a genuine issue of fact exists as to the role he played in plaintiff's termination. Given that Talley is the person against whom plaintiff lodged her August 2007 discrimination complaint, we find this evidence probative.

Although it is virtually undisputed that plaintiff took more vacation days in 2007 than were allowed under the Innophos policy and that this is a legitimate, non-discriminatory reason for

---

[117]Long v. Eastfield College, 88 F.3d 300 (5th Cir. 1996); Shirely v. Chrysler First, Inc., 970 F.2d 39 (5th Cir. 1992).

[118]Gee v. Principi, 289 F.3d 342, 347 (5th Cir. 2002) quoting Shirley, 907 F.2d at 44.

plaintiff's termination, the court finds that plaintiff has also alleged other facts which, if deemed credible by the trier of fact, would form a reasonable basis for a finding of pretext in this case. First, plaintiff alleges that other coworkers, including Andy Chao, at times took more vacation days than were allowed under Innophos policy.[119] Plaintiff points out that none of these other employees were terminated for violating the policy. Second, plaintiff alleges that, as her supervisors, Talley and Adams approved each of her vacation requests and were not sanctioned for making these approvals in violation of the policy at issue.[120]

For these reasons, the court finds that plaintiff has sufficiently demonstrated the existence of material fact issues that, if decided in her favor, would enable judgment against defendant on her ADEA retaliation claim. Accordingly, summary judgment is inappropriate as to that claim and defendant's motion will be denied in this respect.

We now turn to plaintiff's claim under the Louisiana whistleblower statute, La. R.S. 23:967, which prohibits an employer from reprisal against an employee who, among other acts, "[o]bjects to or refuses to participate in an employment act or practice that is in violation of [state] law."[121] In order to prevail on a claim under this statute, plaintiff must prove that her employer committed an actual violation of state law.[122] Plaintiff's only state law allegation, other than this claim of retaliation, is that the reduction of her duties and pay in January of 2007 constituted age

---

[119]R. 44 at p. 30.

[120]Id.

[121]La. R. S. 23:967(A)(1).

[122]Johnston v. Georgia Pacific, LLC, 2009 WL 2849619 (M.D. La. 2009) (internal citations omitted).

discrimination, a violation of La. R.S. 23:301. As explained above, this court has already determined that her state claim for these alleged discriminatory acts is prescribed under Louisiana law due to plaintiff's failure to timely file suit on such claim. Accordingly, we now find that plaintiff's reprisal claim under La. R.S. 23:967 must be dismissed. Defendant's motion will therefore be granted as to this claim.

5.   Is plaintiff entitled to seek punitive damages in conjunction with her ADEA retaliation claim?

Defendant asserts that plaintiff erroneously seeks punitive damages under 42 U.S.C. § 1981, to which she is not entitled under the ADEA.[123] Plaintiff argues that such damages are available to her under "§ 1981a."[124] The court has reviewed plaintiff's amended and supplemental complaint, in which she claims punitive damages under this Section.[125] We agree with defendant that plaintiff's reference to claims under § 1981 appears to be an error, as plaintiff alleges no discrimination based on race, color, religion, sex or national origin.[126] Moreover, Fifth Circuit jurisprudence is clear that, unlike in cases involving Title VII claims, punitive damages are simply not available under the ADEA.[127] In short, we are at a loss to explain plaintiff's continued urging of a punitive damage claim under the ADEA. Accordingly, defendant's motion will be granted to the extent that plaintiff's punitive damage claim under 42 U.S.C. § 1981 will be dismissed.

---

[123]R. 35 at p. 40.

[124]R. 44 at p. 39.

[125]R. 8.

[126]42 U.S.C. § 2000e-2(a)(1).

[127]Smith v. Berry Co., 165 F.3d 390 (5th Cir. 1999) citing Dean v. American Sec. Ins. Co., 559 F.2d 1036, 1039 (5th Cir. 1977).

33

## IV.    CONCLUSION

The court has carefully reviewed the great volume of argument and evidence before it concerning defendant's motion for summary judgment in this case. As plaintiff's EEOC charge is the root of our jurisdiction to hear her claims under the ADEA and applicable Louisiana law, we first examine the scope of the charge to determine the breadth of our authority over such claims. In this matter, we find that plaintiff's purported claims of age discrimination based on a protracted history of age-based verbal harassment and her claims of hostile work environment incorporating these harassment allegations to be outside the scope of the charge at issue. Accordingly, we find that such claims should be dismissed for want of jurisdiction. Recognizing the importance of this particular issue, as to which we find reasonable minds may differ under available jurisprudence, to an orderly adjudication of plaintiff's claims and finding no just reason for delay, the court will direct the issue of whether or not these claims were included within the scope of plaintiff's EEOC charge be certified for immediate appeal under Fed. R. Civ. P. 54(b).

Examining defendant's allegations concerning applicable statutes of limitation and prescriptive periods, we also find that, were plaintiff's claims for age-based verbal harassment fairly included in the scope of her EEOC charge, such claims would be deemed time-barred and prescribed under federal and state law. Similarly, we find that plaintiff's federal and state claims of age discrimination based on January 2007 changes to her duties and pay are time-barred and prescribed under federal and state law based on plaintiff's failure to file suit on such claims within applicable delays. Accordingly, we find that such claims should be dismissed with prejudice. Conversely, the court finds that plaintiff's retaliation claims under the ADEA, based on her August 2007 report of age discrimination and October 2007 termination should be preserved for further proceedings,

34

plaintiff having demonstrated the existence of genuine fact issues thereon. Plaintiff's claim under Louisiana's whistleblower statute, however, must be dismissed based on our prior determination that plaintiff's only other state law claim is prescribed, leaving plaintiff unable to demonstrate an actual violation of state law as required for recovery under the whistleblower statute's anti-reprisal provision.

Finally, we find that plaintiff's urging of a claim for punitive damages under 42 U.S.C. § 1981 is in error, as plaintiff brings no claims as to which this Section's punitive damages provision would apply. Accordingly, we find that such claim should be dismissed with prejudice.

The court will issue an order and judgment in conformity with these findings.


**Alexandria, Louisiana**
**February 22 , 2011**

**JAMES T. TRIMBLE, JR.**
**UNITED STATES DISTRICT JUDGE**